IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TOTAL SAFETY U.S., INC. and ZURICH | § | |
| SERVICES CORPORATION, as Subrogee | § | |
| of Total Safety U.S., Inc. | § | |
| | § | Civil Action No. 3:16-cv-00098 |
| v. | § | |
| | § | |
| CRESCENT ENERGY SERVICES, LLC | § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

TO THE HONORABLE JUDGE GEORGE C. HANKS, JR:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiffs, Total Safety U.S., Inc. ("Total") and Zurich Services Corporation, as Subrogee of Total Safety U.S., Inc. ("Zurich") (collectively "Plaintiffs"), file their Motion for Summary Judgment and Memorandum in Support, and would respectfully show this Court as follows:

**I.
SUMMARY OF THE ARGUMENT**

1.      This is a breach of contract case arising out of Defendant Crescent Energy Services, LLC's ("CES") breach of a contractual indemnity provision that is part of a contract between  CES and McMoRan Oil & Gas ("McMoRan").  Total was sued by one of CES's employees in a personal injury lawsuit that arose out of work performed by CES for McMoRan pursuant to the contract.  At all relevant times, Total was a contractor for McMoRan.  Based on the indemnity provision, CES was required to indemnify Total in the lawsuit.  Despite tendering multiple demands for defense and indemnity, CES failed to honor its contractual indemnity obligation.

2.      Ultimately, the issue before the Court is whether Plaintiffs are entitled to recover pre-tender defense and indemnity attorneys' fees and expenses incurred and/or paid in the previous lawsuit.  For the reasons stated more fully herein, Plaintiffs are entitled to summary judgment as a matter of law because (1) the contract's indemnity provision is a valid and enforceable contract that satisfies Texas' fair notice requirements and complies with the exception to the Texas Oilfield Anti-Indemnity Act ("TOAIA"); (2) fees and expenses incurred by an indemnitee in defending a claim for which indemnity is owed under a contract are recoverable from the indemnitor; and (3) CES's failure to honor its contractual indemnity obligation is a breach of the contractual indemnity provision.

## II.
## SUMMARY JUDGMENT EVIDENCE AND EXHIBITS

3.      Plaintiffs rely upon the pleadings on file with this Honorable Court as well as the following evidence to support this  motion for summary judgment, all of which are incorporated by reference as if fully set forth herein:

**Exhibit A:**     Declaration of Kristin Gasser ;

| | |
|---|---|
| **Exhibit A-1:** | Master Services Agreement Including General Conditions Under Purchase Orders and/or Verbal Call-Outs; |
| **Exhibit A-2:** | Plaintiff's Fourth Amended Petition in the underlying lawsuit; |
| **Exhibit A-3:** | October 18, 2013 demand for defense and indemnity from Total's counsel; |
| **Exhibit A-4:** | October 21, 2013 demand for defense and indemnity from Total's counsel; |
| **Exhibit A-5:** | October 22, 2013 demand for defense and indemnity from Total's counsel; |

| Exhibit A-6: | String of email correspondence on November 6, 2013, November 11, 2013 and November 12, 2013 to and from Total's counsel and Liberty; |
| Exhibit A-7: | November 12, 2013 correspondence from Liberty |
| Exhibit A-8: | Agreed Notice of Settlement (DOC. 93) filed on December 2, 2013; |
| Exhibit A-9: | Agreed Take Nothing Judgment (DOC. 97) filed on December 23, 2013; |
| Exhibit A-10: | July 13, 2015 demand for indemnity from Total's counsel; |
| Exhibit A-11: | August 7, 2015 demand for indemnity from Total's counsel; |
| Exhibit A-12: | October 19, 2015 demand for indemnity from Total's counsel; |

**Exhibit B:** CES's Amended Answer (Doc. 16); and

**Exhibit C:** CES's Responses to Plaintiffs' First Requests for Admissions.

### III.
### UNDISPUTED FACTS

4.     On or about October 1, 2008, CES and McMoRan entered into a "Master Services Agreement Including General Conditions Under Purchase Orders and/or Verbal Call-Outs" (the "MSA").[1]  Pursuant to the terms of the MSA, CES provided work for McMoRan on its High Island 561A Platform (the "Platform"), which is located off the coast of Galveston, Texas.[2]

5.     The MSA between CES and McMoRan included a mutual indemnity provision, which provides the following in pertinent part:

---

[1]     *See* Declaration of Kristin Gasser, a true and correct copy of which is attached as Exhibit A, ¶ 4; *see also* Master Services Agreement Including General Conditions Under Purchase Orders and/or Verbal Call-Outs ("MSA"), a true and correct copy of which is attached as Exhibit A-1.

[2]     *See* Declaration of Kristin Gasser, Exhibit A at ¶ 5 and CES's Amended Answer (Doc. 16), a true and correct copy of which is attached as Exhibit B, at ¶ 21.

5.0   **INDEMNITIES**

5.1   **CONTRACTOR SHALL RELEASE, INDEMNIFY, DEFEND AND SAVE HARMLESS: (I) OWNER, (II) ANY PARENT, SUBSIDIARY OR OTHER AFFILIATE OF OWNER, … (IV) ANY AND ALL OF THE RESPECTIVE … CONTRACTORS … OF EACH OF THE PERSONS OR ENTITIES DESCRIBED IN (I) THROUGH (III) AND (V) THE INSURERS AND SUBROGEES OF EACH OF THE PERSONS OR ENTITIES DESCRIBED IN (I) THROUGH (IV) (COLLECTIVELY THE "OWNER INDEMNIFIED PARTIES") FROM AND AGAINST ALL CLAIMS, DEMANDS OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER FOR BODILY INJURY OR DEATH OF … CONTRACTOR'S EMPLOYEES … ARISING DIRECTLY OR INDIRECTLY OUT OF THE WORK UNDER THIS AGREEMENT WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO … THE FAULT OR NEGLIGENCE OF ANY PARTY, INCLUDING THE SOLE OR CONCURRENT FAULT OR NEGLIGENCE OF OWNER INDEMNIFIED PARTIES.  FOR THE PURPOSES OF THIS ARTICLE 5.0, THE REFERENCE TO THE CONTRACTORS OF OWNER DOES NOT REFER TO CONTRACTOR HEREUNDER.[3]**

The MSA also required McMoRan to indemnify CES.[4]  Additionally, the MSA required CES to procure comprehensive general liability insurance of at least $1,000,000.00 per occurrence.[5]  Likewise, McMoRan was required to maintain insurance coverages that were equal to at least the insurance coverages that CES was required to carry.[6]

6.   Total was hired by McMoRan as a contractor and performed services for McMoRan on the Platform.[7]  Specifically, Total was performing safety related services on the

---

[3]   *See* MSA, Exhibit A-1, § 5.1.
[4]   *Id*
[5]   *Id* at § 7.4.
[6]   *Id* at § 7.5.
[7]   Declaration of Kristin Gasser, Exhibit A, ¶ 5.

Platform at all relevant times.[8]  Under the MSA, Total (as McMoRan's contractor) is an "Owner Indemnified Part(y)."[9]

7.       On June 8, 2012, Joseph Molander, who was employed by CES, was allegedly injured while working on the Platform.[10]  Mr. Molander filed suit against Total, McMoRan and others in a suit styled C.A. No. 3:12-cv-00314; *Joseph Molander v. McMoRan Exploration Co. and Gulf Crane Service, et al.;* in the United States District Court for the Southern District of Texas, Galveston Division (the "underlying lawsuit").[11]  Based on the allegations in the underlying lawsuit, Mr. Molander was an E-Line Operator on the Platform pursuant to the MSA between McMoRan and CES.[12]  Total was working on the Platform as McMoRan's contractor at the time of the alleged incident.[13]

8.       On October 18, 2013, Total tendered a demand for contractual defense and indemnity to CES.[14]  Total's counsel also sent demands to CES and its insurers, including, but not limited to, Liberty International Underwriters ("Liberty"), on October 21,2013 and October 22, 2013.[15]

---

[8]       *Id*.

[9]       *See* MSA, Exhibit A-1, § 5.1. *See also* CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 4.

[10]      Declaration of Kristin Gasser, Exhibit A, ¶ 6; *see also* Plaintiff's Fourth Amended Petition in the underlying lawsuit, a true and correct copy of which is attached as  Exhibit A-2 and CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 4.

[11]      Declaration of Kristin Gasser, Exhibit A, ¶ 6; *see also* Plaintiff's Fourth Amended Petition in the underlying lawsuit,  Exhibit A-2. *See also* CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, at  p. 3.

[12]      Declaration of Kristin Gasser, Exhibit A, ¶ 6; *see also* Plaintiff's Fourth Amended Petition in the underlying lawsuit,  Exhibit A-2.

[13]      Declaration of Kristin Gasser, Exhibit A, ¶ 6.

[14]      Declaration of Kristin Gasser, Exhibit A, ¶ 7; *see also* October 18, 2013 demand for defense and indemnity from Total's counsel, a true and correct copy of which is attached as Exhibit A-3.

[15]      Declaration of Kristin Gasser, Exhibit A, ¶ 7; *see also* October 21, 2013 and October 22, 2013 demands for defense and indemnity from Total's counsel, true and correct copies of which are attached as Exhibits A-4 and A-5, respectively.

9.      Total's counsel also sent correspondence via email on November 6, 2013 and November 11, 2013 to CES and its insurers regarding the demand.[16]  Liberty accepted Total's demand on November 12, 2013 subject to a reservation of rights.[17]  Pursuant to the acceptance, Liberty, as CES's insurer, provided defense and indemnity to Total as an additional insured.[18]  CES's insurers subsequently paid all of Total's attorneys' fees and expenses that were incurred after October 18, 2013 and settled the underlying lawsuit on Total's behalf.[19]

10.      The underlying lawsuit was resolved through a compromise settlement agreement.[20]  It was dismissed through an Agreed Take Nothing Judgment on December 23, 2013.[21]

11.      On July 13, 2015, August 7, 2015 and October 9, 2015, Total and Zurich[22] sent demands to CES and/or its insurers for contractual indemnity seeking reimbursement for the pre-tender attorneys' fees and expenses incurred before October 21, 2013.[23]  Plaintiffs specifically

---

[16]      Declaration of Kristin Gasser, Exhibit A, ¶ 8; s*ee also* String of email correspondence on November 6, 2013, November 11, 2013 and November 12, 2013 to and from Total's counsel and Liberty, a true and correct copy of which is attached as  Exhibit A-6.

[17]      Declaration of Kristin Gasser, Exhibit A, ¶ 8; s*ee also* November 12, 2013 correspondence from Liberty, a true and correct copy of which is attached as Exhibit A-7 and CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 6.

[18]      *Id.; see also* CES's Amended Answer (Doc. 16), Exhibit B, ¶ 12 and CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 7.

[19]      Declaration of Kristin Gasser, Exhibit A, ¶ 8; *see also* CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 8.

[20]      *Id.; see also* Declaration of Kristin Gasser, Exhibit A, ¶ 9 and Agreed Notice of Settlement (DOC. 93) filed on December 2, 2013, a true and correct copy of which is attached as Exhibit A-8.  The settlement was memorialized in a "Confidential Release and Indemnity Agreement" (the "Agreement") that Mr. Molander executed on December 13, 2013.  As the Agreement is confidential, Plaintiffs will make the Agreement available to the Court for *in camera* review, if necessary.

[21]      *See* Declaration of Kristin Gasser, Exhibit A, ¶ 9; s*ee also* Agreed Take Nothing Judgment  (DOC. 97) filed on December 23, 2013, a true and correct copy of which is attached as Exhibit A-9.

[22]      It is undisputed that Zurich is Total's insurer.  *See* CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 5.

[23]      *See* Declaration of Kristin Gasser, Exhibit A, ¶ 10; s*ee also* July 13, 2015, August 7, 2015 and October 19, 2015 demands for indemnity from Total's counsel, true and correct copies of which are attached as Exhibits A-10 through A-12, respectively.

demanded the payment of all the attorneys' fees and expenses incurred before October 18, 2013 as reimbursement.[24]   CES failed to honor its contractual indemnity obligation and Plaintiffs filed this suit on April 12, 2016.[25]   To date, CES has not accepted the demand for indemnity and has not reimbursed Plaintiffs.[26]

## V.
## SUMMARY JUDGMENT STANDARD

12.     Summary judgment shall be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[27]   Once a movant has demonstrated that there is no genuine issue of material fact, the burden shifts to the non-movant to provide specific facts showing the existence of a genuine issue for trial.[28]   There is no issue for trial unless there is sufficient evidence favoring the non-moving party for jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.[29]   When ruling on a defendant's motion for summary judgment, mere existence of a scintilla of evidence in support of the plaintiff's position will not be sufficient; there must be evidence on which the jury could reasonably find for the plaintiff.[30]

## VI.
## ARGUMENTS AND AUTHORITIES

13.     The MSA's indemnity provision is a valid and enforceable contract because it satisfies the fair notice requirements under Texas law and complies with the exception to the

---

[24]     Declaration of Kristin Gasser, Exhibit A, ¶ 10.
[25]     *See* Plaintiffs' Original Complaint (Doc. 1), a true and correct copy of which is maintained in the Court's file.
[26]     Declaration of Kristin Gasser, Exhibit A, ¶ 10*; see also* CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, pp. 10 and 11.
[27]     FED. R. CIV. P. 56(a); *see Johnson v. Canal Barge Co.*, 181 F. Supp. 3d 413, 415 (S.D. Tex. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).
[28]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
[29]     FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
[30]     *Id.*

Texas Oilfield Anti-Indemnity Act ("TOAIA").[31]  CES breached the contract by failing to honor its contractual indemnity obligation to pay for the attorneys' fees and expenses incurred and/or paid by Plaintiffs.  CES also breached the contract by failing to reimburse Plaintiffs for all pre-tender attorneys' fees and expenses that were incurred and/or paid.  Consequently, Plaintiffs are entitled to summary judgment as a matter of law.

**A.    The MSA's Indemnity Provision Is Valid.**

14.    The MSA's indemnity provision satisfies the Texas fair notice requirements and it does not violate the TOAIA.  An indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss or liability and provides the indemnitee with a cause of action to recover against the indemnitor.[32]  Agreements that involve an extraordinary shifting of risk are valid and enforceable if they satisfy two fair notice requirements.[33]

15.    First, under the express negligence test, a party's intent to be released or indemnified from its own negligence must be clear and unambiguous.[34]  Second, the clause must be "conspicuous."[35]  Whether an indemnity agreement complies with both requirements is a question of law for the court.[36]  CES's duty to indemnify is clearly and unambiguously stated in the MSA.  Moreover, the MSA's indemnity provision is conspicuous.  Therefore, the indemnity provision satisfies both fair notice requirements and is valid and enforceable.

---

[31]    It is undisputed that Texas law applies.  *See* CES's Amended Answer (Doc. 16), Exhibit B, ¶ 22.

[32]    *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993).

[33]    *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 387 (Tex.1997); *Dresser,* 853 S.W.2d at 508.

[34]    *Ethyl Corp. v. Daniel Constr. Co.*, 752 S.W.2d 705, 708 (Tex. 1987).

[35]    *Dresser*, 853 S.W.2d at 508-11.

[36]    *Dresser*, 853 S.W.2d at 509' *see also Enron Corp. Sav. Plan v. Hewitt Associates, L.L.C.*, 611 F.Supp.2d 654, 664 (S.D. Tex. 2009).

1. <u>The MSA's Indemnity Obligation is Clear and Unambiguous.</u>

16. The MSA's indemnity provision is valid because its is clear and unambiguous. According to the express negligence test, a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms.[37] The intent of the parties "must be specifically stated in the four corners of the document."[38] The subject indemnity obligation is stated in clear and unambiguous terms.[39]

Specifically, the indemnity provision provides in pertinent part:

**CONTRACTOR SHALL RELEASE, INDEMNIFY, DEFEND AND SAVE HARMLESS…(THE "OWNER INDEMNIFIED PARTIES") FROM AND AGAINST ALL CLAIMS, DEMANDS OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER FOR BODILY INJURY…OF… CONTRACTOR'S EMPLOYEES…ARISING DIRECTLY OR INDIRECTLY OUT OF THE WORK UNDER THIS AGREEMENT WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO…THE FAULT OR NEGLIGENCE OF ANY PARTY, INCLUDING THE SOLE OR CONCURRENT FAULT OR NEGLIGENCE OF OWNER INDEMNIFIED PARTIES.[40]**

The indemnity provision clearly and unambiguously requires CES to indemnify the owner indemnified parties for their sole or concurrent negligence.[41] Therefore, the indemnity provision passes the express negligence test. It is undisputed that Total, as McMoRan's contractor, was an owner indemnified party.[42] Thus, Total is entitled to indemnity.

---

[37] *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 725 (Tex. 1989); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987).

[38] *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)). *See also Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

[39] MSA, Exhibit A-1, § 5.1.

[40] *Id.*

[41] MSA, Exhibit A-1, § 5.0.

[42] Declaration of Kristin Gasser, Exhibit A, ¶ 5. *See also* MSA, Exhibit A-1, § 5.1 and CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 4.

2.      The indemnity obligation is conspicuous.

17.      Based on the above referenced language, the indemnity agreement is also conspicuous.   To satisfy the conspicuousness requirement, the indemnity agreement "must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it."[43]   Language is conspicuous if it appears in larger type, contrasting colors, or otherwise calls attention to itself.[44]

18.      The indemnity provision satisfies the conspicuousness requirement because it appears under a capitalized heading entitled "Indemnities."[45]   The wording in the indemnity provision is bold and in all capitals.[46]   As the language in the MSA satisfies the fair notice requirements, the indemnity provision is valid and enforceable as a matter of law.

3.      The indemnity agreement meets the exceptions to the TOAIA.

19.      The indemnity provision does not violate the TOAIA.   Under the TOAIA, an agreement pertaining to an oil or gas well is void if it purports to indemnify a person against loss or liability for damage arising from personal injury or death.[47]   However, not all indemnity agreements in the oil and gas industry are void.[48]   "[A]n indemnity agreement wherein 'the parties agree in writing that the indemnity obligation will be supported by liability insurance

---

[43]      *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508).
[44]      *Ametch Elevator Servicers Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. Partnership*, 248 S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2007) (holding that the capitalized heading, followed by the language in all capitals, attracts the attention of a reasonable person, and thus, is conspicuous). *See Dresser*, 853 S.W.2d at 511 (stating that language in all capital headings is conspicuous); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 132 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (finding that two paragraphs were conspicuous because the headings were in all capitals).
[45]      MSA, Exhibit A-1, § 5.1.
[46]      *Id.*
[47]      TEX. CIV. PRAC. & REM. CODE § 127.003; *Ken Petroleum*, 24 S.W.3d at 349.
[48]      *Nabors Corporate Services, Inc. v. Northfield Ins. Co.*, 132 S.W.3d 90, 96 (Tex. App.—Houston [14h Dist.] 2004).

coverage to be furnished by the indemnitor,' is excluded from the purview of the TOAIA."[49]  If the parties have executed an applicable agreement, the TOAIA exception applies and the indemnity agreement is not invalidated.[50]

20.     Here, MSA required the parties to provide mutual indemnity obligations for which they agreed to procure insurance or qualified self-insurance of up to $1,000,000 per occurrence.[51]  Additionally, the insurance obligations are mutual.[52]  Therefore, the MSA meets the exception to the TOAIA and is a valid indemnity agreement.

21.     Nonetheless, CES contends that the indemnity provision is not enforceable and/or violates the TOAIA.[53]  CES maintains this untenable position even though its insurer, Liberty, accepted Total's demand for defense and indemnity on November 12, 2013.[54]  However, Liberty limited its acceptance to only post-tender costs incurred after October 18, 2013.  Based on the plain language of the MSA's indemnity provision, Plaintiffs are entitled to contractual indemnity and/or reimbursement from CES for all attorneys' fees and expenses that were incurred and/or paid, including pre-tender costs that were incurred before October 18, 2013.

**B.     Plaintiffs Are Entitled To Recover The Pre-Tender Defense Costs.**

22.     Pursuant to CES's indemnity obligation, Plaintiffs are entitled to recover the pre-tender attorneys' fees and expenses that were incurred and/or paid.  A contract for indemnity is

---

[49]     *Nabors Corporate Services, Inc.*, 132 S.W.3d at 96 (citing TEX. CIV. PRAC. & REM. CODE § 127.003).

[50]     *See id.*

[51]     MSA, Exhibit A-1, §§ 7.4.3 and 7.5.  *See Ken Petroleum Corp.*, 24 S.W.3d at 347.  As CES's indemnity obligation is not unilateral, the cap of $500,000 does not apply.  *See* TEX. CIV. PRAC. & REM. CODE § 127.005.

[52]     Exhibit A-1, at §§ 7.4.3 and 7.5.

[53]     CES's Amended Answer, Exhibit B, at ¶ 19.

[54]     Declaration of Kristin Gasser, Exhibit A, ¶ 8; s*ee also* November 12, 2013 correspondence from Liberty, Exhibit A-7 and CES's Responses to Plaintiffs' First Requests for Admissions, Exhibit C, p. 6.

analyzed under the same legal principles applicable to any other contract.[55]  Under Texas law, courts must give terms in an indemnity agreement their plain, ordinary, and generally accepted meaning.[56]  The ordinary and commonly accepted meaning of the phrase "indemnify, defend, and save harmless" includes attorney's fees, and the contractual promise to defend includes the obligation to pay for the defense of such suits.[57]

23.     Thus, an obligation to pay attorneys' fees arises out of a duty to indemnify.[58]  An indemnitee is entitled to recover the costs of litigation as they are losses arising out of or in connection with a claim for which the indemnitee is to be saved harmless.[59]  The MSA's indemnity provision included the contractual promise to "release, indemnify, defend, and save harmless."[60]  Therefore, the attorneys' fees and expenses incurred by Plaintiffs are recoverable from CES.

24.     However, CES did not indemnify Total nor has it reimbursed Plaintiffs for the attorneys' fees and expenses incurred and/or paid prior to the October 18, 2013 tender. Likewise, CES has refused to reimburse Plaintiffs for the attorneys' fees and expenses incurred in this breach of contract case.  CES's refusal to honor its contractual indemnity obligations is a breach of the MSA's contractual indemnity provision.

---

[55]     *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex. 2000). *Safeco Ins. Co. of America v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied).
[56]     *E.I. Du Pont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Lehmann v. Har-Con Corp.*, 78 S.W.3d 555, 562 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).
[57]     *Keystone Equity Mgmt. v. Thoen*, 730 S.W.2d 339, 340 (Tex.App.-Dallas 1987, no writ). *See Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261, 269-270 (Tex. Civ. App Houston [1st] 1971, writ refused Feb 2, 1972) (holding attorneys' fees and court costs are recoverable under a hold harmless indemnity agreement).
[58]     *Fisk Elec. Co. v. Constructor's & Assoc., Inc.*, 888 S.W.2d 813, 815 (Tex. 1994).
[59]     *Patch v. Amoco Oil Co.*, 845 F.2d 571 (5th Cir. 1988).
[60]     Exhibit 1-A, § 5.1.

**C.** **Plaintiffs Are Entitled To Summary Judgment On The Breach Of Contract Claims.**

25.    CES breached the contract as a matter of law and Plaintiffs are entitled to summary judgment.   The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[61]

26.    Plaintiffs tendered demands for indemnity and/or reimbursement to CES on multiple occasions, but CES refused to accept the demands.   Importantly, the MSA does not provide a basis for CES's arbitrary denial as it ***does not*** contain a temporal limitation that limits CES's indemnity obligation or a "prompt-notice" provision that required Total to promptly notify CES of any claims or suits against Total.[62]

27.    Rather, based on the plain language of the indemnity provision and Texas law (as discussed above), Plaintiffs are entitled to contractual indemnity and/or reimbursement without reservation or limitation from CES.   CES's attempts to shift its contractual indemnity obligations to its insurers is likewise to no avail.   The MSA contained a contractual indemnity provision and an additional insured provision.   The contractual indemnity obligation belongs to CES and the additional insured obligation belonged to (and was accepted) by CES's insurers.[63]   However, these are two separate and distinct obligations.   While any attempted reliance on an insurance contract's notice provision is misplaced, Plaintiffs nonetheless provide an analysis of same out of an abundance of caution.

---

[61]    *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001).

[62]    *See* Exhibit A-1, § 5.1 (emphasis added).

[63]    *See* Exhibit A-1, §§ 5.1 and 7.0; *see also* November 12, 2013 correspondence from Liberty, Exhibit A-7.

28.     The Texas Supreme Court in *PAJ, Inc. v. Hanover, Ins. Co.* held that an insurer cannot escape its obligation to deny coverage because of an untimely notice.[64]   The insurance policy at issue in *PAJ, Inc.* required the insured to notify the insurer of any claim or suit brought against the insured "as soon as practicable."[65]   The insured in *PAJ* failed to notify its insurer of the lawsuit against it until four to six months after litigation commenced.[66]   Despite the insured's tardy notice, the Court held that an insured's failure to timely notify its insurer of a claim or suit *did not* defeat coverage if the insurer was not prejudiced by the delay.[67]

29.     The Fifth Circuit has acknowledged that in many instances of an untimely notice of a claim, the insurer is not prejudiced at all.[68]   Whether an insurer is prejudiced by delay may be determined as a matter of law when the material facts are undisputed.[69]   To establish prejudice, an insurer must demonstrate a material adverse change in position due to the delay.[70]

30.     While this is not a case alleging the breach of an insurance contract, the aforementioned analysis is instructive with regard to CES's obligations as an indemnitor.   The MSA's indemnity provision does not make a distinction between pre-tender and post-tender costs nor does it contain a temporal limitation or a "prompt-notice" provision.

31.     Even if the MSA included a provision that required Total to promptly notify CES or its insurer of a claim or suit, CES was not prejudiced by late notice.   To the contrary, Total's demand for defense and indemnity was accepted and honored by CES's insurers under a reservation of rights.   Pursuant to that acceptance, CES's insurers paid all attorney's fees and

---

[64]     *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2008).
[65]     *PAJ*, 243 S.W.3d at 631.
[66]     *Id.*
[67]     *PAJ*, 243 S.W.3d at 637.   *See Hanson Prod. Co. v. Ams. Ins. Co.*, 108 F.3d 627, 630-31 (5th Cir. 1997) (internal citation omitted).
[68]     *Hanson Prod. Co.*, 108 F.3d at 631.
[69]     *Trumble Steel Erectors, Inc. v. Moss*, 304 Fed. Appx. 236, 239 (5th Cir. 2008) (citing *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003)).
[70]     *See Trumble*, 304 Fed. Appx. at 239.

expenses (including the settlement amount) that were incurred after October 18, 2013.  It is undisputed that Total was included in the Notice of Settlement, the confidential settlement Agreement and the Agreed Take Nothing Judgment that dismissed all claims against Total and all other defendants in the underlying suit.  Thus, neither CES nor any of its insurers suffered an adverse change in position due to an alleged delayed notice of claim.

32.     Plaintiffs are entitled to summary judgment on their breach of contract claims because the indemnity provision is a valid and enforceable contract.  Plaintiffs tendered multiple demands for indemnity and/or reimbursement to CES, but CES has refused to indemnify and/or reimburse Plaintiffs.  Consequently, CES has breached the MSA's indemnity provision as a matter of law.  Therefore, Plaintiffs are entitled to recover all pre-tender attorney's fees and expenses and all attorney's fees and expenses incurred in this breach pf contract case.

**PRAYER**

Wherefore, premises considered, Plaintiffs Total Safety U.S., Inc. and Zurich Services Corporation, as Subrogee of Total Safety U.S., Inc., pray that this Court grant their Motion for Summary Judgment in its entirety, order Crescent Energy Services, LLC to pay Total's defense costs from the underlying suit in full including any and all pre-tender defense costs, pay all attorneys' fees and expenses that incurred by Plaintiffs Total Safety U.S., Inc. and Zurich Services Corporation, as Subrogee of Total Safety U.S., Inc. to prosecute this breach of contract case and such other and further relief, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

GALLOWAY, JOHNSON, TOMPKINS
  BURR & SMITH

*/s/ Adraon D. Greene*
Adraon D. Greene
  Federal I.D.  No. 25029
  State Bar No. 24014533
  agreene@gallowayjohnson.com
Kelsi M. Wade
  Federal I.D.  No. 2274018
  State Bar No. 24088597
  kwade@gallowayjohnson.com

OF COUNSEL:

GALLOWAY, JOHNSON, TOMPKINS
  BURR & SMITH
1301 McKinney Suite 1400
Houston, Texas   77010
(713) 599-0700 – Telephone
(713) 599-0777 – Facsimile

**ATTORNEYS FOR TOTAL SAFETY
U.S., INC. and ZURICH SERVICES
CORPORATION, as Subrogee of
Total Safety U.S., Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2017, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.  I also certify that I have forwarded this filing by regular U.S. Mail, postage pre-paid, this same day to all non-CM/ECF participants.

*/s/ Adraon D. Greene*
Adraon D. Greene
Kelsi M. Wade

16